**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                                                              )<br>              Plaintiff/Respondent      )<br>                                                              )<br>v.                                                          )<br>                                                              )<br>JAMES MOSER,                             )<br>                                                              )<br>              Defendant/Petitioner.      )<br>                                                              ) | Case No. 06-cr-40068-07-JAR<br>Case No. 13-cv-4121-JAR |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner James Moser's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 631), as supplemented (Docs. 632, 635). In his motion, Petitioner seeks relief on several grounds that he was denied effective assistance of counsel. Moser also requests appointment of counsel (Doc. 634) and an evidentiary hearing (Doc. 635). The Government has responded (Doc. 640) and Moser has filed a reply (Doc. 647). After a careful review of the record and the arguments presented, the Court denies Petitioner's motions without further evidentiary hearing.

**I.      Legal Standards**

      **A.      General**

Under § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States

District Courts:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion. . . .

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[1] Petitioner must allege facts which, if proven, would warrant relief from his conviction or sentence.[2] An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[3]

A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[4] "Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not."[5] A movant may overcome this procedural bar by

---

[1] 28 U.S.C. § 2255(b).

[2] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996).

[3] *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 ("the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[4] 28 U.S.C. § 2255.

[5] *United States v. Magleby,* 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied,* 547 U.S. 1097 (2006).

showing either of "two well recognized exceptions."[6]  First, the movant must show good cause for not raising the issue earlier and actual prejudice to the movant's defense if the issue is not considered.[7]  Cause may "be established by showing that counsel rendered constitutionally ineffective assistance."[8]  Second, the "failure to consider the federal claims will result in a fundamental miscarriage of justice."[9]

## B.  Ineffective Assistance of Counsel

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[10]  A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[11]  First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[12]  To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[13]  This standard is "highly demanding."[14]  Strategic or tactical decisions

---

[6]*United States v. Cervini,* 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied,* 544 U.S. 904 (2005).

[7]*Id.*

[8]*United States v. Wiseman,* 297 F.3d 975, 979 (10th Cir. 2002) (citations omitted).

[9]*Cervini,* 379 F.3d at 990 (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)); *see Bousley v. United States,* 523 U.S. 614, 621–22 (1998) (holding that a showing of actual innocence meets the fundamental miscarriage of justice prong).

[10]U.S. Const. amend. VI; *Kansas v. Ventris*, 556 U.S. 586 (2009).

[11]466 U.S. 668 (1984).

[12]*Id.* at 688.

[13]*Id.* at 690.

[14]*Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

3

on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[15] In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[16] Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the distorting effects of hindsight.'"[17]

Second, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[18] To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[19] A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[20] This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[21] A defendant must demonstrate both *Strickland* prongs to establish a

---

[15]*Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

[16]*Strickland*, 466 U.S. at 689.

[17]*Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[18]*Strickland*, 466 U.S. at 687.

[19]*Id.* at 694.

[20]*Id.*

[21]*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[22]

Finally, Petitioner appears *pro se*. Therefore, his pleadings are to be construed liberally and not to the standard applied to an attorney's pleadings.[23] If a petitioner's motion can be reasonably read to state a valid claim on which he could prevail, the court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[24] However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[25] For that reason, the court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[26]

## II.   Procedural Background

The initial Indictment in this case was returned on May 17, 2006, charging Petitioner James Moser and eight others with fifty-three counts of bank fraud, five counts of money laundering and conspiracy to commit the substantive charges. A First Superseding Indictment was filed on August 8, 2007, adding an additional defendant. Prior to trial, five of these defendants entered guilty pleas and agreed to cooperate by testifying at trial. Four defendants, including Petitioner, stood trial beginning on January 12, 2010. The jury returned guilty verdicts

---

[22]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000) (quoting *Strickland*, 466 U.S. at 697) ("The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

[23]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[24]*Id*.

[25]*Id*.

[26]*See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

5

against Petitioner on conspiracy Count 1, and bank fraud Counts 30, 41, 44 and 45.[27] The jury acquitted co-defendants F. Jeffrey Miller, Todd Earnshaw and Brian Rouse.[28] On August 30, 2010, this Court sentenced Petitioner to serve a term of 60 months' imprisonment as to Count 1 and 27 months' imprisonment to Counts 30, 41, 44, and 45, to be served concurrently as to each other and Count 1.[29]

Petitioner directly appealed his convictions, and on March 8, 2012, the United States Court of Appeals for the Tenth Circuit affirmed those convictions.[30] Petitioner filed a motion for rehearing, which was denied on April 10, 2012.[31] Petitioner filed a petition for writ of certiorari to the United States Supreme Court, which was denied on October 2, 2012.

Throughout these proceedings, and a separate criminal case on bankruptcy fraud charges, *United States v. James Dewey Moser*, 09-40086-CM, Petitioner was represented by the same attorney, Michael Jackson. This timely § 2255 motion was filed on September 30, 2013, alleging that Mr. Jackson's representation was ineffective.[32]

---

[27]Doc. 484.

[28]Docs. 481–483.

[29]Doc. 580.

[30]*United States v. Moser*, 466 F. App'x 713 (10th Cir. 2012).

[31]Doc. 616.

[32]Doc. 631.

### III.     Facts of the Case and Trial Proceedings

This Court presided over Petitioner's jury trial. At trial, several witnesses testified against Petitioner, including three of the co-defendants: Steve Middleton, Angela Parenza, and Lanny Ross. Six other witnesses gave testimony that related to Petitioner: Ima Bennett, Jane May, Nancy Frey, Tony Hilger, Ron Darden, and Doug Schneebli.

The testimony at trial established that co-defendant F. Jeffrey Miller, at one time a successful home builder in the Kansas City area, eventually could no longer market his homes directly to individual home buyers. As a result, Miller began selling his homes in bulk to investors.[33] One of those investors was Petitioner.

Nancy Frey testified that Petitioner and her late husband, Joe Frey, entered into a partnership to purchase investment properties.[34] At the time, Joe Frey was retired. Mrs. Frey testified that it was Petitioner's job to find purported renters to lease the properties for Mr. Frey.[35]

Two of Miller's associates, Angela Parenza and Steve Middleton, testified at trial. Parenza worked for Miller for approximately seven years and ran Miller's office. Parenza testified that Miller reached an agreement to sell homes in volume to Petitioner and an individual named Joseph Frey at a discounted price.[36] Parenza testified to meeting with Petitioner and Frey

---

[33]Trial Tr. at 1790–91. There are fifteen volumes of trial transcripts in the record (Docs. 597–611). For convenience, transcript references are to the page number.

[34]*Id*. at 1380–81.

[35]*Id*. at 1381, 1390.

[36]*Id*. at 1792–93, 1989.

7

to fill out sales contracts for several homes.[37]

Steve Middleton, a builder and the owner of Somerset Homes, testified regarding how Petitioner became involved in the purchase of Miller homes, and how Petitioner made a large amount of money from these transactions.[38] Middleton testified that Petitioner set the sale price for the homes. The price on the sales contract was not the true sales price. Instead, this contract price would be what Middleton believed he or Miller could sell the house for, plus what Petitioner believed he could get a bank to loan on the property. The difference between the true sales price and the contract price would be paid in kickbacks to Petitioner.[39]

Initially, Middleton and Miller paid Petitioner outside of closing, but later included the payments on the HUD-1 because Petitioner wanted his money faster.[40] To accomplish this, Petitioner created false invoices to provide to the title company as part of closing, claiming that he provided construction supervision and other services that were not true. Petitioner submitted invoices claiming he was owed for services such as "design and consulting fees," and "marketing services," but Parenza testified that Petitioner rendered no such services.[41] Parenza testified that eventually the payments from Miller to Petitioner were paid out of closing proceeds, but falsely represented to the lender to be "Referral Fee and Services," and "Consultation of Decor."[42]

---

[37]*Id*. at 1795.

[38]*Id*. at 1593–71.

[39]*Id*. at 1540–41

[40]*Id*. at 1598–1600.

[41]*Id*. at 1805–06; Ex. 37-L-2.

[42]*Id*. at 1810, 1989–90, 1991–92, 1195–96.

Middleton testified that Petitioner's involvement was no different than that of any other buyer.[43]

Doug Schneebli handled four of the Frey/Moser loan applications. Schneebli testified that although he may have only met Petitioner during the first meeting, Schneebli knew Petitioner was involved with the transactions.[44] Schneebli testified that the records from the title companies' files would have been sent to the lender.[45]

The income and employers listed on the Frey loan applications were false. Initially, Frey's income on the loan applications was listed as $16,700 from a company called Advanced Composite Technologies ("ACT"). According to a loan application dated June 27, 2002, Frey had been employed by ACT for one year.[46] A letter purportedly authored by Charles Baker, CEO for ACT, stated Frey's start date was April 1, 2002.[47] Some of the loan applications also included copies of checks purportedly for payroll from ACT issued to Frey.[48] However, when Jane May, ACT employee, was asked by National City Mortgage to research these pay checks, May discovered that these were not payroll checks, and had actually been issued to someone other than Frey in a different amount.[49]

Later, as the number of properties purchased by Frey and Petitioner grew, the amount of

---

[43]*Id.* at 1625; 1637–38.

[44]*Id.* at 1182.

[45]*Id.* at 1308–09.

[46]Ex. 29B.

[47]Trial Tr. at 1329; Ex. 30H.

[48]*Id.* at 1332; Ex. 30D.

[49]*Id.* at 1353–57; Ex. 30R.

9

income shown on the loan applications also increased.[50]  For example, on the loan application dated April 24, 2003, Frey's employer was listed as James Moser and Associates, making $17,000 per month, with additional income from a second job at KC Masters, making $3662 per month.[51]  In fact, Mrs. Frey testified that her husband did not work for either of those employers.[52]  Earlier loan applications showed that Frey had retired from KC Masters in 2001.[53]  These documents played a role in the lenders' decision to fund these loans.[54]

During trial, Petitioner's counsel introduce checks written to Frey as evidence that Frey was an employee of James Moser and Associates.[55]  These checks were written in various amounts, and did not match the purported payroll check stubs that were submitted to the lenders.[56]  And according to a letter from Petitioner that was part of several loan packages submitted to lenders, Frey began his employment with Moser and Associates on October 1, 2002.[57]  One of the checks Petitioner admitted, however, was dated prior to Frey's purported employment.[58]

In addition, on several of the Frey transactions, including those in Counts 30, 41, 44 and

---

[50]*Id.* at 1195.

[51]*Id.* at 1162–64; 1171–72; 1188–95; 1200; 1207–08.

[52]*Id.* at 1385.

[53]Ex. 29B.

[54]Trial Tr. at 1206.

[55]Ex. 744-4, 744-5.

[56]Exs. 44F, 744-5.

[57]Ex. 44G.

[58]Ex. 744-4.

10

45, the loan package contains a copy of a lease agreement between Tony Hilger and Joseph "Fry" for a property at 24209 Bob White Ln., Lees Summit, Missouri.[59] This address was Frey's residence,[60] and was listed on several Uniform Loan Applications as an outstanding liability.[61] At trial, Hilger testified that this lease agreement was false and he had never leased a house from "Fry" or Petitioner.[62] Hilger did not know Joe "Fry," but did know Petitioner.[63] Hilger worked with Petitioner for a short period of time, and knew that their boss had leased a house from Petitioner.[64]

After the partnership with Frey dissolved, Petitioner continued his fraudulent activity with other individuals, including Ima Bennet and Lanny Ross. Bennett testified about her role in falsifying information provided to lenders.[65] Ross acted as an appraiser on the transactions charged in Counts 50 through 54.[66] Petitioner told Ross what he needed the appraisal value to be, and Ross complied.[67]

---

[59] Exs. 30T, 41E, 44E, 45E.

[60] *See* Uniform Loan Applications for Counts 29 through 47.

[61] Ex. 41B, MIL028999.

[62] Trial Tr. at 1702–03.

[63] *Id*. at 1703–05.

[64] *Id*.

[65] *Id*. at 1101, 1104, 1114, 1131.

[66] *Id*. at 34, 1406–11.

[67] *Id*. at 1411.

## IV. Discussion

### A. Ineffective Assistance of Counsel

#### 1. Counsel Meaningfully Tested the Government's Case

The gist of Petitioner's claim is that "counsel entirely failed] to subject the prosecutor's case to meaningful adversarial testing."[68] The Court's review of the record refutes this argument. Petitioner contends that counsel did not effectively cross-examine Doug Schneebli, Lanny Ross, and Steve Middleton. Counsel thoroughly and vigorously cross-examined, and had the benefit of three other attorneys' cross-examination of these and other Government witnesses. Counsel highlighted for the jury instances where the jury could have chosen to disregard the Government's evidence. For example, counsel introduced evidence that conflicted with Jane May's testimony regarding the status of Joe Frey as an employee of ACT.[69] Cross-examination methods by defense counsel are a matter of trial strategy,[70] and Petitioner's claim is denied on these grounds.

Moreover, the record and other evidence further rebut Petitioner's claim. Defense counsel's active participation in the trial, the time spent in consultation with the defendant, and hours spent in preparation for the trial can be indicative of reasonably effective performance.[71]

---

[68] Doc. 632 at 1.

[69] Trial Tr. at 1372–74.

[70] *See Richie v. Mullin*, 417 F.3d 1117, 1124 (10th Cir. 2005) ("We have previously noted that counsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy.").

[71] *See United States v. Rivera*, 900 F.2d 1462, 1472–73 (10th Cir. 1990).

12

In this case, counsel filed numerous motions before, during, and after trial.[72] This case was designated as complex,[73] and counsel was responsible for reviewing thousands of pages of discovery. Moreover, Petitioner's complaints are inconsistent with the Court's recollection of trial, where counsel made relevant and necessary objections, argued trial issues, demonstrated a professional manner, cogently outlined the main points for the jury during opening and closing arguments, and was engaged in advocating Petitioner's interests. Accordingly, the Court cannot conclude that defense counsel failed to meaningfully test the Government's case.

### 2. Defendant's Supporting Facts do not Demonstrate Deficient Performance and/or Prejudice

Petitioner identifies twenty-six "Facts in Support" of his effort to challenge counsel's performance. These facts lack specificity and are difficult to analyze. For example, Petitioner alleges counsel

> failed to show the jury through readily available discover [sic], evidence and testimony that Petitioner was 1) <u>not</u> one of two people who agreed to violate law and that 2) the Petitioner <u>did not</u> know the essential objectives of the conspiracy an [sic] that 3) the Petitioner <u>did not</u> knowingly and voluntarily participated [sic] in the conspiracy to commit bank fraud.[74]

But Petitioner never identifies the evidence counsel allegedly failed to introduce. Without this

---

[72]*See* Doc. 56, Motion to Designate as Complex Case; Doc. 258, Motion to Sever Defendant; Doc. 261, Motion for Discovery and Inspection; Doc. 263, Motion to Inspect Demonstrative Evidence; Doc. 264, Motion to Produce Field Notes; Doc. 265, Motion for Discovery of Non-Testifying Co-Conspirator Statements; Doc. 267, Motion to Suppress; Doc. 273, Motion for Bill of Particulars; Doc. 359, Motion for Additional Peremptory Challenges; Doc. 360, Motion to Submit Jury Questionnaire; Doc. 439, Motion to Appoint an Investigator; Doc. 441, Motion in Limine; Doc. 512, Motion for Acquittal. Counsel also represented Petitioner throughout the direct appeal.

[73]Doc. 56.

[74]Doc. 632 at 1, ¶ 1.

13

basic information essential to evaluating his claims, Petitioner does not carry his burden.[75]  The majority of Petitioner's other facts suffer from the same problem.[76]

Petitioner also contends that counsel failed to call several key witnesses, including a representative from the title company to prove that referral fees were disclosed; his wife, Doris Moser, to prove that Frey frequently used Petitioner's office; and an expert, Doug Patterson, to verify that giving an appraiser assistance in finding homes that have sold privately would help establish accurate comparable sales.  Deciding what witnesses to call is a strategic decision within trial counsel's discretion.[77]  Petitioner has not demonstrated that counsel lacked a reasonable basis for not calling these individuals.  And, to the extent counsel did not bring out this information on cross-examination of Government witnesses, Petitioner's claims regarding the potential testimony of these witnesses are conclusory and without any factual support.

Petitioner also argues that counsel did not call him as a witness, and claims that he could have offered testimony that would have changed the outcome of the trial.  Specifically, Petitioner claims that he would have testified that he was out of town when the Hilger lease was faxed, that Hilger's name was prominently displayed on a board that Joe Frey could have seen, that he had a prospective buyer package on Hilger, and that he knew how to spell Frey's name.  Petitioner fails, however, to allege that counsel prevented him from testifying, or to show how this testimony, if offered, would have changed the outcome of the trial.  As the Tenth Circuit held,

---

[75]*See United States v. Caraway*, Nos. 06-40138, 09-4141, 2010 WL 3721689, at *2 (D. Kan. Sept. 15, 2010) (citing *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

[76]*See, e.g.*, *id*. at Supporting Facts 2-4, 10, 17, 21, 26 (failing to identify specific evidence).

[77]*Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) (explaining that "the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney.").

14

there was ample evidence to support the jury's conclusion that Petitioner was knowingly involved in the scheme to defraud banks and that he intended to defraud them, including Mrs. Frey's testimony about his role, from Hilger's testimony that he knew Petitioner but not Frey, from the fax tag line on three copies of the lease, and that Petitioner stood to profit from the scheme.[78]

Even assuming Petitioner established deficient performance, he has failed to establish prejudice.  Errors by counsel, even if unreasonable, are only significant if they have prejudicial effect on the outcome of the trial.[79]  Petitioner has the burden to prove such prejudicial effect by showing that confidence in the outcome of the case was undermined because of these errors.[80]  To sustain a motion, the court must determine that under the totality of the circumstances, counsel's errors altered the evidentiary picture to such a degree that it is reasonably likely a jury would have decided differently.[81]  Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[82]  At trial, nine witnesses testified against Moser, including three of the five cooperating co-defendants: Steve Middleton, Angela Parenza and Lanny Ross, all of whom plead guilty to the conspiracy as charged in Count 1.[83]  Given the weight of the evidence against him, and the highly speculative nature of his allegations, Petitioner has not shown how any uncalled witness's

---

[78]*United States v. Moser*, 466 F. App'x 713, 715–16 (10th Cir. 2012).

[79]*Strickland v. Washington*, 446 U.S. 668, 691–92 (1984).

[80]*Id*. at 693.

[81]*Id*. at 695–96.

[82]*Id*. at 694.

[83]Docs. 107, 223, 284.

testimony or his own testimony could have altered the outcome of the trial. And, importantly, several of Petitioner's claims relate to arguments that were fully litigated at trial. For example, Supporting Fact 5 alleges that counsel failed to introduce evidence that Petitioner could not have faxed the bogus Hilger lease to the broker and that Mr. Frey was in the office that day. But counsel made this argument in his Motion for Acquittal, where he challenged the substantive bank fraud convictions on the grounds that all of the fraudulent loan documents were prepared by Frey.[84] Accordingly, the Court concludes that Petitioner has failed to demonstrate either prong under *Strickland*, and his motion is denied.

### B.  Request for Evidentiary Hearing and Appointment of Counsel

Petitioner also requests appointment of counsel and an evidentiary hearing. A defendant generally does not have a right to counsel in a § 2255 proceeding unless an evidentiary hearing is required.[85] And, an evidentiary hearing is generally not required when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[86]

Petitioner has not demonstrated that a hearing is necessary to resolve his motion. The issues raised are general and conclusory, and the existing record is sufficient for resolving them. Thus, the Court denies his request for an evidentiary hearing. Based on this ruling, Petitioner is not entitled to appointment of counsel under § 2255. Although the Court has discretion to

---

[84] Doc. 512.

[85] *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.").

[86] 28 U.S.C. § 2255.

appoint counsel when "the interests of justice so require,"[87] there is nothing unusually complex or compelling about the issue raised by Petitioner that warrants appointment under this standard. Petitioner's *pro se* pleadings demonstrate his ability to articulate his claims, albeit unsuccessfully. The Court denies Petitioner's request for appointment of counsel.

## V.   Certificate of Appealability

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[88] A petitioner may satisfy his burden only if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[89] A petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA. He must, however, "prove something more than the absence of frivolity or the existence of mere good faith."[90] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[91] For the reasons detailed in this Memorandum and Order, Petitioner has not made a substantial showing of the denial of a constitutional right, and the Court denies a COA as to its ruling on his § 2255 motion.

---

[87]18 U.S.C. § 3006A(a)(2)(B).

[88]28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[89]*Said v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Lennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[90]*Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[91]*Id.* at 336; *see also United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005).

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner James Moser's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 631) is DENIED; Petitioner is also denied an evidentiary hearing (Doc. 635) and a COA.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Appoint Counsel (Doc. 634) is DENIED.

**IT IS SO ORDERED.**

Dated: October 24, 2014

                                      S/ Julie A. Robinson

                                      JULIE A. ROBINSON

                                      UNITED STATES DISTRICT JUDGE